09-4093-cr
U.S. v. Ahders

**AMENDED OPINION**

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term 2010

Argued: August 24, 2010      Decided: September 16, 2010
                             Amended: September 21, 2010

Docket No. 09-4093-cr

_____

UNITED STATES OF AMERICA,

                              *Appellee,*

                    v.

STEVEN AHDERS,

                              *Defendant-Appellant.*

_____

Before:   KATZMANN, HALL, and CHIN, *Circuit Judges.*

Appeal from a judgment of the United States District Court for the Northern District of New York (Norman A. Mordue, *Chief Judge*) convicting defendant-appellant of producing child pornography.

REMANDED.

ALEXANDER BUNIN, Albany, N.Y., *for Defendant-Appellant.*

BRENDA K. SANNES, Assistant United States Attorney (Thomas Spina, Jr., Assistant United States Attorney, *on the brief*), for Richard S. Hartunian, United States Attorney for the Northern District of New York, *for Appellee*.

*PER CURIAM:*

Defendant-appellant Steven Ahders appeals from a judgment of the United States District Court for the Northern District of New York convicting him, pursuant to a guilty plea, of one count of producing child pornography, in violation of 18 U.S.C. §§ 2251(a), (e) and 2256(8), and sentencing him principally to a term of imprisonment of 580 months. We affirm the conviction and remand for the district court to reconsider and clarify the basis for one aspect of its sentence.

BACKGROUND

In 2005, while on supervised release for a prior conviction for possession of child pornography, Ahders met a woman through a personal ad. They married in September 2006, and the woman and her five-year-old son, EM, moved into Ahders's home in Schenectady, New York. Thereafter, Ahders began sexually molesting EM and filming and photographing the abuse. The molestation continued until July 2007.

- 2 -

Ahders was arrested in January 2008. In addition to admitting the molestation of EM, he admitted that he had purchased an "Acer" laptop computer in February or March 2007, and that he used the internet to download images of both boys and girls under the age of 15 years. Investigators seized, in Ahders's home, an Acer laptop computer, a digital camera, and a "personal digital assistant" ("PDA"), which included a storage card. The laptop and PDA contained numerous images of child pornography, including images of nude girls tied and bound, some approximately 11 to 12 years old, one tied to a bed and another tied and blindfolded. Two pornographic images of EM were found on the storage card.

During the ensuing investigation, EM informed investigators that Ahders sometimes tied EM's wrists to the headboard of a bed or the handlebars of a bicycle and then sexually abused him. EM described how Ahders used a video camera to record the abuse. Ahders admitted to filming EM engaging in sexually explicit conduct.

During Mother's Day weekend in 2007, Ahders sexually molested two other children, BB and VB, who had joined EM at Ahders's home for a sleepover. During the sleepover, Ahders made EM and BB perform sexually explicit acts on each other while he

- 3 -

took pictures of them. BB's sister, VB, reported that the children slept together in a tent in the attic, and that Ahders approached her after the boys fell asleep and took off her pants and underwear even though she slapped his hands and tried to stop him. Ahders then held her legs apart and photographed her from about a foot away. VB also reported that Ahders had "a laptop" with him in the attic.

EM told investigators that a few days after the sleepover, Ahders showed him a picture of Ahders's penis in VB's vagina. VB, however, told investigators that Ahders never touched her vagina.

On November 7, 2008, Ahders pleaded guilty to Count 1 of the indictment, which charged him with producing child pornography involving "a male minor" -- EM. Ahders did not plead guilty to any charges involving VB or BB or the possession of the child pornography found on his laptop and PDA. Ahders and the Government entered into a written plea agreement, but they did not stipulate to the calculation of Ahders's sentencing range under the United States Sentencing Guidelines (the "Guidelines").

The Probation Department prepared a presentence report (the "PSR"). Although Ahders pleaded guilty only to the one count involving EM, the PSR concluded that Ahders had exploited

three minors (EM, VB, and BB) and, pursuant to U.S.S.G. § 2G2.1(d)(1), treated the exploitation of each child as a separate count of conviction. The offense level was calculated separately for each victim. For EM, a 4-level enhancement was included for Ahders's possession of material that portrayed sadistic or masochistic conduct -- the images of nude minor girls bound and tied. For VB, a 2-level enhancement was included for Ahders's actions in removing her pants and underwear and photographing her. For BB, a 2-level enhancement was included for Ahders's actions in directing EM and BB to engage in sexually explicit conduct while he took pictures and sexually abused BB.

The three calculations were grouped pursuant to U.S.S.G. § 3D1.4. In the end, Ahders's offense level totaled 44,[1] which was then reduced to the highest offense level found in

---

[1] This was based on an offense level of 44 for the offense against EM and 40 for the offenses against BB and VB. The score of 44 included the 4-level enhancement for the sadistic images of the girls. Without this enhancement, the score would have been 40 and the grouping analysis would have been as follows: the highest offense level for any unit would have been 40, the combined adjusted offense level would have been 43 (instead of 47), and the total offense level would have been 40 (instead of 43). *See* U.S.S.G. § 3D1.4. An offense level of 40, with Ahders's Criminal History Category of III, would have yielded a Guideline range of 360 months to life. If the conduct against BB and VB were not included, the total offense level would have been reduced to 41 with the 4-level enhancement and to 37 without it.

the Guidelines Sentencing Table: 43.  The Guidelines "range" for an offense level of 43 is life imprisonment.  Because the statutory maximum term of imprisonment for producing child pornography is fifty years, Ahders's Guidelines range was reduced from life imprisonment to fifty years (600 months).  18 U.S.C. § 2251(a), (e); U.S.S.G. § 5G1.1(c)(1).

The district court adopted the facts and the Guidelines calculation in the PSR, and sentenced Ahders to the statutory maximum term of incarceration, fifty years, minus twenty months as credit for the time Ahders served in New York State custody between his arrest and federal sentencing.

This appeal followed.

DISCUSSION

A.   Applicable Law

In general, we review sentences using a "deferential abuse-of-discretion standard."  *See United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc).  This standard applies "both to 'the sentence itself' and to 'the procedures employed in arriving at the sentence.'"  *United States v. Verkhoglyad*, 516 F.3d 122, 127 (2d Cir. 2008) (quoting *United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006)).  We review the district court's conclusions as to interpretations of the Guidelines de novo,

*United States v. Awan*, 607 F.3d 306, 312 (2d Cir. 2010), and findings of fact for clear error, *United States v. Salim*, 549 F.3d 67, 72 (2d Cir. 2008).

When reviewing a sentence, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, . . . or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). We must then conduct a substantive review by evaluating "the length of the sentence imposed in light of the factors enumerated under 18 U.S.C. § 3553(a)." *United States v. Villafuerte*, 502 F.3d 204, 206 (2d Cir. 2007).

A district court must begin the sentencing process by calculating the advisory Guidelines range before proceeding to an independent, individualized consideration of the sentence to impose. *Gall*, 552 U.S. at 49-50; *Cavera*, 550 F.3d at 189. A district court must make "specific factual findings," by a preponderance of the evidence, to support any sentencing enhancement under the Guidelines. *See United States v. Espinoza*, 514 F.3d 209, 212 (2d Cir. 2008) (quoting *United States v. Molina*, 356 F.3d 269, 275 (2d Cir. 2004)); *United States v. Salazar*, 489 F.3d 555, 558 (2d Cir. 2007). A district court need

- 7 -

not specifically recite all the facts relevant to its Guidelines calculation; rather, it is sufficient for the district court to adopt the findings in the presentence report -- *if* those findings are adequate to support the sentence imposed. *See, e.g.*, *United States v. Carter*, 489 F.3d 528, 540 (2d Cir. 2007) (holding that "the District Court's reliance on the inadequate findings of the PSR, without more, constituted plain error"); *United States v. Eyman*, 313 F.3d 741, 745 (2d Cir. 2002). The district court is required to rule on controverted matters that will affect sentencing, Fed. R. Crim. P. 32(i)(3), but it may do so by adopting the recommendations of the presentence report. *United States v. Prince*, 110 F.3d 921, 924 (2d Cir. 1997).

B.   Application

On appeal, Ahders does not challenge the substantive reasonableness of his sentence, but argues that the district court committed procedural error by improperly calculating the advisory Guidelines range. He argues principally that the district court erred in two respects:  by including Ahders's production of sexually explicit images of BB and VB and by adding a 4-level enhancement for Ahders's possession of sadistic or masochistic child pornography.

a.    The Inclusion of BB and VB

Ahders contends that the conduct with respect to BB and VB should not have been grouped and combined with the offense of conviction.  Ahders notes that Count 1 of the indictment charged the production of pornography with respect to only one "male minor."  We reject the argument.

First, it is not dispositive that Count 1 did not cite the acts against BB and VB.  Section 2G2.1(d)(1) provides:

> If the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction.

U.S.S.G. § 2G2.1(d)(1).  As the commentary explains, "if the relevant conduct of an offense of [producing child pornography] includes more than one minor being exploited, *whether specifically cited in the count of conviction or not*, each such minor shall be treated as if contained in a separate conviction."  U.S.S.G. § 2G2.1(d)(1), cmt. n.5 (emphasis added).  Hence, the conduct involving BB and VB may be included if it was "relevant conduct."

Second, the exploitation of BB and VB was relevant conduct.  "Relevant conduct" includes:

> all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1)(A).  This includes "both charged and non-charged conduct."  *United States v. Bove*, 155 F.3d 44, 47-48 (2d Cir. 1998).

The conduct involving BB and VB occurred "during the commission of the offense of conviction," as it occurred during the period that Ahders was producing pornographic images and film of EM.  Ahders exploited and abused all three children, including abusing EM and BB together, during Mother's Day weekend in 2007 when VB and BB were staying with EM for a sleepover.  During this weekend, Ahders produced pornographic images of all three children.  Clearly, then, the abuse of VB and BB was "relevant conduct," and it was properly considered by the district court.

Ahders argues that he was not given adequate notice that he would be held accountable in this case for his actions against VB and BB.  He is incorrect.  At his plea allocution, the Government put Ahders on notice that it would be seeking a

- 10 -

"multiple count analysis" because "two other minors" had been sexually abused and photographed by Ahders, which would result in 3 levels being added to the total offense level.  Ahders elected to plead guilty anyway.

Ahders also argues that the district court relied on insufficient evidence of the exploitation of BB and VB, noting the unreliable nature of the statements of the three young children.  He also contends that the district court failed to make sufficient factual findings and credibility determinations.  We disagree.

As paragraphs 30-31 of the PSR relate, BB stated that Ahders told him and EM to touch each other's penises and then took photographs of them doing so, and VB stated that Ahders took off her pants, held her legs apart, and took photographs.  The district court expressly overruled Ahders's objections to paragraphs 29 through 32 of the PSR, found that the described conduct was "relevant conduct," and concluded that the findings were "supported by a preponderance of the evidence."  Ahders raises no colorable challenge to this evidence, and it is clearly sufficient to establish that Ahders exploited VB and BB within the meaning of 18 U.S.C. § 2251.

b. The Enhancement for Possession of
Sadomasochistic Images

Ahders argues that the district court erred when it applied a 4-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(4) for possession of material portraying sadistic or masochistic conduct. In the circumstances here, the district court could properly apply the enhancement only if (1) the child pornography Ahders was convicted of producing involved the portrayal of sadomasochistic conduct or (2) Ahders engaged in conduct that was "relevant" to his production of child pornography involving EM and that "relevant conduct" involved sadomasochistic material. *See* U.S.S.G. §§ 1B1.3(a)(1), 2G2.1(b)(4). Unfortunately, the record lacks clarity as to the basis for the district court's imposition of this enhancement.

The colloquy at sentencing suggests that the district court considered three possible bases for imposing the enhancement: (1) Ahders's conduct in filming his sexual abuse of EM tied to a bed and bicycle; (2) Ahders's producing an image of him sexually penetrating VB; and (3) Ahders's possession on his laptop and PDA of images of young girls tied and bound. If proven, all of this alleged conduct would have involved material that portrayed sadistic or masochistic conduct or other

- 12 -

depictions of violence involving minors.  *United States v. Gilmore*, 599 F.3d 160, 168 n.6 (2d Cir. 2010) (images depicting sexual penetration of eight-year old girl by adult male are sadistic because they depict sexual act that would cause pain to minor); *United States v. Freeman*, 578 F.3d 142, 147-48 (2d Cir. 2009) (sadism enhancement applies when "the district court makes an objective determination that (1) an image depicts sexual activity involving a minor and (2) the depicted activity would have caused pain to the minor"); *United States v. Hoey*, 508 F.3d 687, 691-92 (1st Cir. 2007) (photographs depicting sexual penetration of young victims by adult males represent "sadistic" and "violent" materials).  The issue then would be whether the proven conduct was either part of the offense of conviction or relevant conduct to the offense of conviction.

As to the first possible basis, the district court merely inquired about "the handcuffing and the being tied up" of EM.  The district court made no findings in this respect. Moreover, although the district court adopted the findings of the PSR, the PSR did not rely on any images that Ahders produced for imposing the 4-level enhancement.  Hence, it appears that the district court did not rely on the images that Ahders made of EM

in bondage, images that surely are sadomasochistic in nature. On remand, the district court may want to undertake an analysis of the enhancement under § 2G2.1(b)(4) with respect to the images Ahders produced of EM and consider whether the production of these images was part of the offense of conviction or, alternatively, whether it was relevant conduct.

As to the second possible basis, the district court did not resolve the conflict between EM's assertion that he saw a photograph of Ahders penetrating VB and VB's assertion that Ahders never touched her vagina. Fed. R. Crim. P. 32(i)(3) (district court must resolve controverted matters that affect sentencing). Moreover, it is not apparent from the colloquy at the sentencing that the district court relied on this second basis to impose the enhancement under § 2G2.1(b)(4), and the PSR did not. On remand, if the district court elects to consider this second basis for imposing the enhancement, it must first resolve the conflict between EM's statement and VB's statement and decide whether such an image was produced, and, if so, then determine whether Ahders's production of the image is relevant conduct to the offense of conviction -- his production of child pornography involving EM.

As to the third possible basis, it does appear that the images of the girls tied and bound found on the laptop and PDA were the basis for the district court's imposition of the 4-level enhancement. The colloquy at sentencing and the PSR so suggest. Ahders does not dispute that these were sadistic images of child pornography or that he possessed them, but he argues that they are not relevant because "[t]here is no act or omission by [him] that associates those images with his conviction for production of child pornography." In essence, he argues that his possession of the sadomasochistic images of the girls -- which he did not produce -- was not "relevant conduct" to his production of child pornography involving EM. The PSR and district court concluded that Ahders's possession of the images of the girls was relevant conduct, but they did so in wholly conclusory fashion, without any analysis and without explaining the link between his possession of the images of the girls and his production of pornographic materials involving EM. Hence, we are unable to engage in meaningful appellate review.

This Circuit has not previously addressed the question under what circumstances the possession of sadomasochistic images is "relevant conduct" to the production of child pornography. Indeed, it appears that the issue has not been specifically

addressed by any Circuit. *See, e.g.*, *United States v. Shuler*, 598 F.3d 444, 446 (8th Cir. 2010) (declining to decide issue, and noting "this appears to be an issue of first impression, raising difficult questions of whether sadistic or masochistic materials that [the defendant] did not produce are nonetheless relevant conduct to his production offense . . . under U.S.S.G. 1B1.3(a)(1), because they are 'acts . . . that occurred during the commission of the offense of conviction'").

The phrase "occurred during the commission of the offense of conviction" is not defined in the Guidelines, nor does the commentary provide any guidance. The words "relevant conduct" suggest more is required than mere temporal proximity, as the other conduct must be "relevant" and it must occur "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."

On remand, if the district court chooses to rely on the sadomasochistic images of the girls as relevant conduct, it must provide at least some analysis of the relatedness, if any, between Ahders's possession of the images and his production of child pornography involving EM. If the district court finds that Ahders's possession of the images of the girls "occurred during

- 16 -

the commission of" his production of pornographic materials involving EM, or "in preparation for that offense," it must point to facts in the record to support its conclusion.

If the district court elects to proceed on this basis, it may want to consider the following factors:

- The temporal proximity between the possession of the images of the girls and the offense of conviction, *i.e.*, when Ahders obtained the images and whether Ahders possessed them during his abuse of EM;

- The similarity between the images on the laptop and PDA and the images made of EM;

- Whether Ahders used the same laptop and PDA with EM as he used to download the images of the girls;

- Whether Ahders showed the images to EM and, if so, for what purpose, *i.e.*, whether Ahders was using the images to arouse EM or to "teach" him what to do, *see* U.S.S.G. § 1B1.3(a)(1)(A) (relevant conduct includes conduct "in preparation for" offense of conviction);

- Whether Ahders viewed the images to assist him in his production of child pornography, *i.e.*, whether he used the images as samples, models, or precedents; and

- As Ahders admitted that he liked looking at child pornography (which he did on his laptop and PDA), whether his viewing the images aroused him and was a factor in his abusing EM, *see United States v. Brand*, 467 F.3d 179, 197 (2d Cir. 2006) ("a direct connection exists between child pornography and pedophilia"); *see also* Fed. R. Evid. 414 (allowing propensity evidence in "child molestation" cases); 18 U.S.C. § 2252A ("child pornography" cases

include both production of child pornography and possession of child pornography).

None of these factors is dispositive, nor are any required; we list them merely as factors that the district court may want to take into account should it elect to consider imposing the 4-level enhancement based on Ahders's possession of the bondage images of the girls. *See, e.g.*, *United States v. Nance*, 611 F.3d 409, 410-11, 416 (7th Cir. 2010) (where defendant was convicted of receipt of child pornography involving 12-year old girl he had sexually molested, holding his possession of pornographic materials involving other children was relevant conduct that could be used to enhance sentence); *United States v. Stulock*, 308 F.3d 922, 924-26 (8th Cir. 2002) (where defendant was convicted of receiving video of child pornography, affirming district court's holding that his possession of pornographic bondage images of children on his computer was relevant conduct that could be used to enhance his sentence); *United States v. Ellison*, 113 F.3d 77, 82-83 (7th Cir. 1997), *cert. denied*, 522 U.S. 893 (1997) (where defendant was convicted of receipt of video of child pornography, holding, with little discussion, that district court's inclusion of defendant's possession of magazines

containing sadomasochistic images of boys as "relevant conduct" was "far from clear error").

Accordingly, we remand this case to the district court so that it can reconsider and clarify its basis for imposing the 4-level enhancement for possession of sadomasochistic materials, state the factual bases for doing so, and articulate its analysis. If it deems it necessary, the district court may resentence the defendant and in so doing may hold an evidentiary hearing. By identifying the three possible bases for the enhancement discussed above, we do not intend to limit the district court's consideration to only those three bases. Nor do we intend to suggest that on remand the district court is bound in any way to determine the facts consistently with the way we have discussed them based on the present record.

CONCLUSION

For the foregoing reasons, the conviction is AFFIRMED, and the case is REMANDED to the district court for further consideration and explanation of the sentence in conformance with this opinion and for resentencing if the district court determines that to be necessary. This panel will retain jurisdiction over any subsequent appeal; either party may notify the Clerk of a renewed appeal within fourteen days of the

district court's decision. *See United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994).