[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-15316
Non-Argument Calendar
_____

D.C. Docket Nos. 1:16-cv-00134-MW-GRJ,
1:14-cr-00015-MW-GRJ-1

JOSEPH MICHAEL DIAZ,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 13, 2020)

Before WILSON, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

Joseph Diaz appeals the denial of his 28 U.S.C. § 2255 motion to vacate his

sentence.  We issued a certificate of appealability (COA) on two issues:

(1) whether Diaz's counsel was ineffective for failing to object to the district court's enhancement of Diaz's sentence under U.S.S.G. § 2G2.1(b)(2)(A); and (2) whether the district court erred by failing to hold an evidentiary hearing to determine whether his counsel was ineffective for failing to file a notice of appeal. Because Diaz has not demonstrated reversible error on either issue, we affirm.

## BACKGROUND

Diaz is serving a 720-month sentence for two counts of producing child pornography, in violation of 18 U.S.C. § 2251(a). Briefly stated, Diaz was a teacher and swim coach who used the latter position to abuse minor boys. Five members of his swim team—each of whom were over 12 years of age, but younger than 16—reported that they engaged in various forms of sexual activity that were either filmed or photographed as part of an "initiation." The "initiation" involved three levels, where, at the direction of Diaz, the children: (1) exposed their privates to Diaz, (2) used Diaz's phone to take nude photos of themselves, and (3) used Diaz's phone to record videos of themselves masturbating. A search of Diaz's various media devices yielded over 1,000 videos and over 9,000 images of child pornography, including images of the members of the swim team who were "initiated" into Diaz's "club." Though indicted on six counts of production of child pornography, with the benefit of a plea agreement, Diaz pled guilty to only Counts One and Two.

2

Probation prepared a presentence report (PSR), which indicated that U.S.S.G. § 2G2.1 was the appropriate guideline for both Counts One and Two.[1] Diaz's adjusted offense level was 42 and his criminal history category was I.  His recommended guideline range was 360 months' imprisonment to life on each count.  Of the various enhancements and adjustments to his offense level, only one is relevant here:  under § 2G2.1(b)(2)(A), a two-level enhancement was added to both counts because the offense involved the commission of a sexual act or contact.  According to the PSR, the enhancement was warranted because Diaz "masturbated in front of the victims and at times would have the victims masturbate themselves and/or each other while he watched."  Diaz's counsel did not object to this recommended enhancement.

Diaz was sentenced to 360 months' imprisonment on each count, to run consecutively, followed by a lifetime of supervised release.  He did not appeal his convictions or sentences.

## DISCUSSION

### I.

In his § 2255 motion, Diaz claims that his counsel was ineffective for failing to object to the district court's application of the two-level enhancement under

---

[1] Diaz was sentenced under the 2013 Sentencing Guidelines.  Therefore, all guideline citations are to that version.

3

§ 2G2.1(b)(2)(A).  In his view, the behavior supporting the enhancement—that he masturbated in front of the victims or had them masturbate themselves—was not relevant conduct that the district court could consider because there was insufficient evidence that he committed these acts in preparation for, during the commission of, or in order to avoid detection or responsibility for the offenses of conviction.  Specifically, Diaz contends that because he was convicted of conduct that occurred *before* the behavior supporting the enhancement, the latter could not support the former as relevant conduct.  He also argues that counsel should have been aware that other circuits have narrowed the acts considered as relevant conduct.  Therefore, Diaz argues his counsel should have objected to the application of this enhancement.

When reviewing the denial of a § 2255 motion, we review legal conclusions de novo and findings of fact for clear error.  *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc).  Whether trial counsel was ineffective is a mixed question of law and fact that is reviewed de novo.  *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002).  To succeed on an ineffective-assistance claim, a movant must show that: (1) his attorney's conduct was deficient; and (2) the deficient conduct prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  But there is no reason for a court deciding an ineffective-assistance-of-counsel claim to address both components of the *Strickland* inquiry if

4

the movant makes an insufficient showing on one. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

Assuming, without deciding, that an objection to the § 2G2.1(b)(2)(A) enhancement would have been meritorious, we begin—and end—our inquiry with the deficiency prong of the *Strickland* analysis.[2]  Counsel's conduct is deficient if it falls below the wide range of competence demanded of attorneys in criminal cases. *Strickland*, 466 U.S. at 687.  Successful ineffective-assistance claims demonstrate "that no competent counsel would have taken the action that . . . counsel did take." *United States v. Freixas*, 332 F.3d 1314, 1319–20 (11th Cir. 2003).  Generally, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

If a legal principal is unsettled, counsel is not deficient "for an error in judgment." *Black v. United States*, 373 F.3d 1140, 1144 (11th Cir. 2004).  Thus, if

---

[2] The government argues that Diaz's counsel was not ineffective because any objection to the § 2G2.1(b)(2)(A) enhancement, or the relevant conduct supporting it, would have been meritless. *See Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (per curiam) ("Failing to make a meritless objection does not constitute deficient performance.").  In the government's view, the convicted conduct was part of Diaz's "grooming" of the victims because his behavior "was intended to and did in fact escalate from photographs of genitalia to videos of masturbation to sexual molestation."  We need not consider this argument—or Diaz's related argument about the timing and the meaning of relevant conduct—since his claim fails on other grounds and we "may affirm the judgment of the district court on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012).

5

an attorney could have reasonably reached the incorrect conclusion concerning an unsettled question of law, "that attorney's performance will not be deemed deficient for not raising that issue to the court." *Id.* However, "the mere absence of authority does not automatically insulate counsel's failure to object on that basis." *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1304 (11th Cir. 2000). If other circuits have addressed the issue on the merits, this may indicate that a challenge "on such grounds was not wholly without precedent." *Id.*

Under U.S.S.G. § 1B1.3(a)(1)(A), "specific offense characteristics . . . shall be determined on the basis of . . . all acts and omissions committed . . . or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction."[3] The Guidelines define an offense as "the offense of conviction and all relevant conduct under § 1B1.3." *Id.* § 1B1.1, comment. (n.1(H)). Section 1B1.3(a)(1) focuses "on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense." *Id.* § 1B1.3, comment. (n.1). The background section of § 1B1.3's Commentary states that:

> [c]onduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range. The range of information that may be

---

[3] Under Section 1B1.3, relevant conduct also includes those acts that occurred in "preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A). But the government's arguments focus on demonstrating that the acts that occurred during the offenses of conviction, so we have trained our focus there too.

considered at sentencing is broader than the range of information upon which the applicable sentencing range is determined.

*Id.* § 1B1.3, comment. (backg'd).

The scope and contours of § 1B1.3(a) are not settled in this circuit. We have not defined the scope of § 1B1.3's phrase "occurred during the commission of the offense of conviction." *See id.* § 1B1.3(a)(1). But the term "'offense of conviction' is narrow[] in scope, referring only to the conduct charged in the indictment for which the defendant was convicted." *See United States v. Scroggins*, 880 F.2d 1204, 1209 n.12 (11th Cir. 1989). And while we have stated that we "broadly interpret[] the provisions of the relevant conduct guideline," *United States v. Behr*, 93 F.3d 764, 765 (11th Cir. 1996) (per curiam), we have not defined the precise scope of "relevant conduct."

Diaz and the government cite to decisions of our sister circuits which, even if they are not controlling, are relevant to this appeal. *See Gallo-Chamorro*, 233 F.3d at 1304. Diaz relies on two cases to prove that his counsel should have known that an objection to the relevant conduct would have been proper: *United States v. Wernick*, 691 F.3d 108 (2d Cir. 2012) and *United States v. Schock*, 862 F.3d 563 (6th Cir. 2017). In *Wernick*, the defendant was convicted of receiving, distributing, reproducing for distribution, and possessing child pornography, as well as for enticing minors to engage in sexual activity. *Wernick*, 691 F.3d at 110. Like Diaz, Wernick's sentence was enhanced and the enhancement was supported

by what the district court considered relevant conduct: that Wernick had previously molested four young children. *See id.* at 111–13. But the Second Circuit reversed because "[o]ne criminal act does not become 'relevant' to a second act under the Guidelines by the bare fact of temporal overlap. . . . Without proof of a *connection* between the acts, the second event is literally a coincidence." *Id.* at 115. A similar result was reached in *Schock. See* 862 F.3d at 569 (interpreting the relevant conduct provision in § 1B1.3(a)(1) and determining that because "Schock's exploitation of Victim 1 . . . did not occur until almost a year after the commission of the offense of conviction . . . the government [did] not establish[] that Schock's conduct with respect to Victim 1 occurred during the commission of the offense of conviction").

The government relies on different cases to support its theory that a reasonable attorney could conclude that the § 2G2.1(b)(2) enhancement was properly applied. Most relevant to our inquiry is another Second Circuit decision, *United States v. Ahders*, 622 F.3d 115 (2d Cir. 2010) (per curiam). In that case, the defendant was convicted of one count of producing child pornography involving a male minor, EM. *Id.* at 117. The PSR included facts regarding the molestation of two separate victims—VB and BB—and recommended enhancing the defendant's sentence under § 2G2.1(d)(1). *Id.* The Second Circuit held that the "conduct involving [the other victims] occurred during the commission of the offense of

conviction, as it occurred during the period that [the defendant] was producing pornographic images and film of EM." *Id.* at 120 (internal quotation marks omitted). The Second Circuit stated that, because the defendant produced pornographic images of EM and BB together during a sleepover, the molestation of VB and BB was relevant conduct that the district court properly considered. *Id.*

In our view, these cases demonstrate that the interpretation of relevant conduct under § 1B1.3(a)(1) is unsettled across the circuits; they are a mixed bag of conflicting and non-binding law that would not have provided Diaz's trial counsel with a clear definition of relevant conduct. Of the cases Diaz cites, only *Wernick*, which required "proof of a *connection* between the acts," supports his contention that trial counsel should have known to object to the definition of relevant conduct based on the decisions of other circuits.[4] *See Wernick*, 691 F.3d at 116. But a single decision from a non-binding circuit is not enough to show that trial counsel was deficient for failing to object to an enhancement when the interpretation of the scope of that enhancement was unsettled law in the Eleventh Circuit. *Cf. Gallo-Chamorro*, 233 F.3d at 1304.

---

[4] Though Diaz relies primarily on *Schock* to support his claim that counsel was deficient for not looking to other circuits, the Sixth Circuit decided *Schock* in 2017, well after Diaz's sentencing. *See generally Schock*, 862 F.3d at 563. Obviously, trial counsel could not be expected to have known the conclusions of the *Schock* decision.

9

In short, we refuse to find counsel deficient for a mere error in judgment concerning unsettled law. *See Black*, 373 F.3d at 1144.  To hold otherwise would violate our oft-stated principle that "[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop." *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994).

So, because the scope of relevant conduct was, and arguably still is, unsettled, Diaz has not shown that his trial counsel was deficient.  *See Strickland*, 466 U.S. at 687.  And because Diaz has failed to show deficiency, we affirm without addressing the issue of prejudice.  *See Holladay*, 209 F.3d at 1248.

## II.

Diaz's other claim is that his counsel was deficient for failing to effectively consult him about whether to appeal his sentence and for failing to file a notice of appeal.  He argues that the district court erred when it rejected this claim without conducting an evidentiary hearing.

We review a district court's denial of an evidentiary hearing in a § 2255 proceeding for an abuse of discretion.  *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015).  "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows

improper procedures," or clearly errs in making its factual findings. *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215 (11th Cir. 2014).

If a defendant requests his counsel to file a notice of appeal, and his counsel fails to do so, then counsel has acted in a "professionally unreasonable manner." *Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007). Further, "counsel generally has a duty to consult with the defendant about an appeal." *Id.* District courts are not required to hold an evidentiary hearing in a § 2255 proceeding where the files and records of the case conclusively show that the movant is not entitled to relief. 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877. Evidentiary hearings are also unnecessary when the movant's allegations are based on unsupported generalizations or are patently frivolous. *Winthrop-Redin*, 767 F.3d at 1216. However, district courts should grant an evidentiary hearing and rule on the merits of a movant's claim if he alleges "reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.*

Here, Diaz has not presented sufficient evidence showing that his counsel failed to consult with him about his appellate rights. Rather than elaborating on any discussions he had with counsel, he presents only a single factual assertion in his affidavit: that he "was never advised by [his] previous attorneys as to the nature of the appeals process and what claims could be raised in . . . a direct appeal."

11

This conclusory statement, absent any reasonably specific facts, is insufficient to warrant an evidentiary hearing. *See Winthrop-Redin*, 767 F.3d at 1216.

Because Diaz did not present the district court with sufficient evidence showing that his trial counsel failed to consult with him about his appellate rights, he has consequently failed to show that the district court abused its discretion in failing to hold an evidentiary hearing. *See Rosin*, 786 F.3d at 877. Therefore, we affirm on this issue.

**AFFIRMED.**