**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DONALD LAQUINN WEST, III,

      Defendant - Appellant.

No. 13-7041
(D.C. No. 6:12-CR-00080-RAW-1)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

---

    Donald West III, a.k.a Toby West, pled guilty to sexual exploitation of a minor

child in violation of 18 U.S.C. § 2251(a) and was, for the most part, placid at sentencing.[1]

---

[*] The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is submitted for decision on the briefs.

    This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

[1] He claimed to not "want to cause any more harm to anybody" and to "want to get on with [his] time and serve [his] debt to society." (R. Vol. 2 at 21.) Nonetheless, he brings this appeal.

He was sentenced to 262 months imprisonment. He now challenges his sentence, both procedurally and substantively, and argues the statute of conviction is unconstitutional as applied to him. Two of his arguments on appeal were not presented to the district court and fail to meet the challenge of plain error review. His arguments on the preserved issue are not persuasive. We affirm.

## I. FACTUAL BACKGROUND

Because the district judge adopted the presentence report (PSR) as the factual basis for the sentence, we take the facts from it. In mid-February 2011, K.F., West's eight-year-old stepdaughter, accused him of sexually abusing her. On February 22, 2011, a Child Welfare Specialist with the Oklahoma Department of Human Services (DHS) interviewed K.F. regarding the accusations. She related the following: West had sexually abused her on an almost daily basis in their home for the past year. The only exception was when her mother was home. The abuse consisted of West having her fondle his penis or "noodle." (R. Vol. 3 at 4.) She had seen white/clear stuff come out of West's penis. West would also take indecent photographs of K.F. with the camera on his cell phone. He would instruct her to "take her pants down, bend over and touch her toes." (*Id.*) He would then take pictures of her genitalia. He also recorded indecent videos of her using a video recorder from their home computer. She believed West had deleted the videos because he showed her the computer's delete button. She specifically recalled the abuse from the previous night—West told her to "rub his bad spot" or she would not eat. (*Id.*) She rubbed West's penis while West closed his eyes. She denied ever putting

West's penis in her mouth. West did put his penis on her leg but he did not penetrate her vaginally or orally.[2]

Law enforcement was notified and obtained a search warrant for West's home. Among the items seized were a computer and a BlackBerry cell phone. On the computer, agents discovered a photograph of a nude girl in a bath tub, the focal point of the picture was the child's genitalia. The photograph had been downloaded to the computer from a BlackBerry cell phone. K.F.'s mother identified the girl in the bathtub as K.F. and the location as the home she shared with West.

West was interviewed by law enforcement in 2011; he denied having molested any child. However, in a later interview on October 31, 2012, he admitted he had taken pictures of K.F. in which he had directed her to pose for him and instructed her on what to do and how to sit. West also admitted he took some pictures of K.F. in which he told her to "pull your pants" aside, which exposed her vagina. (R. Vol. 3 at 5.) When he told her to "let me see more," K.F. exposed the inside of her vagina. (*Id.*) He stated he took these pictures with his BlackBerry cell phone and downloaded them to his computer. He also admitted he had downloaded and viewed child pornography on his computer. West

---

[2] K.F. is not the only individual to have accused West of sexual abuse. In 2009, DHS received allegations from West's thirteen-year-old daughter that West had started fondling her at age 3 and having intercourse with her between the ages of 8 and 10. He also allegedly took nude pictures and videos of her. The abuse stopped when she was 12. West's younger sister also claimed to have been molested by West when she was a child; this sister further claimed he had molested a half-sister and a niece. West's son also reported West had fondled himself in front of him and told the son he could watch; the son refused.

denied touching K.F., claiming the pictures were "as far as it went" and he "wouldn't ever act on it." (*Id.*)

## II. PROCEDURAL BACKGROUND

West was indicted on one count of sexual exploitation of a minor child in violation of 18 U.S.C. § 2251(a). The indictment alleged that between January 22, 2010, and January 22, 2011, West "did, employ, use, induce, entice and coerce K.F., a minor child under the age of eighteen, to engage in sexually explicit conduct . . . specifically, the lascivious exhibition of the genitals and pubic area of said minor child, for the purpose of producing a visual depiction of such conduct, and such visual depiction was produced using materials that had been mailed, shipped and transported in interstate and foreign commerce . . . ." (R. Vol. 1 at 14.) West pled guilty without the benefit of a plea agreement.

The PSR determined the base offense level was 32. *See* USSG §2G2.1(a).[3] Because the victim was under twelve years of age, the base offense level was enhanced by four under USSG §2G2.1(b)(1). It was also increased by two because West was a parent, relative or legal guardian of the victim. *See* USSG §2G2.1(b)(5). The PSR also decided a two-level enhancement was warranted under USSG §2G2.1(b)(2)(A) because the offense involved "sexual contact"—K.F. had described touching West's penis in a

_____

[3] The PRS applied the 2012 edition of the United States Sentencing Commission Guidelines Manual. All references to the guidelines in this order and judgment refer to the 2012 edition unless otherwise indicated.

sexual manner.[4]  After applying a three-level downward adjustment for acceptance of responsibility, *see* USSG §3E1.1(a), (b), the total offense level was 37.  That offense level and a Criminal History Category of I resulted in an advisory guideline range of 210 to 262 months imprisonment.  West did not object to the information contained in the PSR.  West was sentenced to 262 months imprisonment and lifetime supervised release.

### III. DISCUSSION

West claims his sentence is unreasonable—procedurally because the judge erroneously enhanced his sentence under USSG §2G2.1(b)(2)(A) (sexual contact) and substantively because it is excessive in light of the circumstances of this case.  He also claims the statute of conviction, § 18 U.S.C. § 2251(a), is unconstitutional as applied to him.

A.     Procedural Reasonableness—USSG §2G2.1(b)(2)(A)

With respect to the USSG §2G2.1(b)(2)(A) enhancement (based on K.F. touching West's penis in a sexual manner), his argument is two-fold.  First, he never admitted as part of his guilty plea that this "sexual contact" occurred and, in fact, he denied ever touching K.F.  According to West, given the conflicting evidence, the judge was required

---

[4] The enhancement also applies if the offense involved the commission of a "sexual act," which requires (1) penetration of the penis into the vulva or anus, (2) contact between the mouth and the penis, vulva, or anus, (3) penetration of the anus or genital opening with any object including a hand or finger, or (4) the intentional touching, not through the clothing, of the genitalia of another person under the age of 16.  *See* 18 U.S.C. § 2246(2); *see also* USSG §2G2.1(b)(2)(A) & comment. (n.2) ("Sexual act" has the meaning given that term in 18 U.S.C. § 2246(2)).  K.F.'s touching of West's penis in a sexual manner does not satisfy any component of this definition.

to make an explicit finding resolving the dispute. Second, even assuming the "sexual contact" occurred, it was not relevant conduct to the charged crime and therefore could not be used to support the enhancement.

"A challenge to the application of a sentencing enhancement tests the procedural reasonableness of a sentence, which requires, among other things, a properly calculated Guidelines range." *United States v. Cook*, 550 F.3d 1292, 1295 (10th Cir. 2008) (quotations omitted). Normally, "we review a district court's legal interpretation of the Guidelines de novo and its factual findings for clear error." *Id.* (quotations omitted). However, because West did not object in the district court, our review is for plain error.[5] *See United States v. Ruiz–Terrazas*, 477 F.3d 1196, 1199 (10th Cir. 2007). Plain error

_____

[5] The government suggests West is not entitled to any review of this issue because he intentionally waived it. At sentencing, West's counsel stated:

> [W]hen we received the presentence report, there are many defendants who might say, well, I want to discount this, I want to argue this, I want to fight about this. When I went to talk to [West] about the presentence report, what [he] says is, I don't want to cause any more harm to anybody, I want to get this over with, I want to get on with my time and serve my debt to society. And that is no—that's all stuff that came afterwards, but it is something that I would say is a stand-up way to cope with the situation that he's in, and to take responsibility for what he did.

(R. Vol. 2 at 20-21.) West disagrees with the government's assessment of this statement. He claims it "was a statement as to [West's] emotional state at the time of sentencing and an argument by counsel to try to influence the court to consider [West's] acceptance of responsibility as [a] factor of his sentence. Though not filed as a separate motion for variance, it was an attempt by counsel to effectively advocate for his client." (Appellant's Reply Br. at 3.) While we share West's view of counsel's statement, we need not decide whether it constitutes a waiver foreclosing appellate review of the issue. *See United States v. Zubia-Torres*, 550 F.3d 1202, 1204-07 (10th Cir. 2008) (distinguishing between waiver and forfeiture). Even assuming the issue was merely forfeited, there was no plain error.

review requires West to show "(1) there was error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Williamson*, 746 F.3d 987, 992 (10th Cir. 2014) (quotations omitted).

1. Factual Dispute

West's first argument concerning the sexual contact enhancement basically alleges the judge failed to perform his duties under Fed. R. Crim. P. 32(i)(3)(B). Under that rule, a sentencing judge "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." But the judge was not faced with a factual dispute. West's failure to admit, as part of his guilty plea, that "sexual contact" occurred does not create a factual dispute. That is tantamount to silence, which, under these circumstances, is neither an admission nor a denial of guilt. Moreover, while West denied touching K.F., the accusation is that <u>she touched him</u> upon his urging. That is a quite different matter and one he has not denied.

Admittedly, West also said his taking pictures of K.F. was "as far as it went" and he "wouldn't ever act on it." (R. Vol. 3 at 5.) To the extent this can be deemed a denial that K.F. ever touched him, we still see no error. That is because "[t]his court has held repeatedly that factual disputes not brought to the attention of the court do not rise to the level of plain error." *United States v. Svacina*, 137 F.3d 1179, 1187 (10th Cir. 1998) (citing cases). The reason for this rule is a sound one: "As a factual issue, an objection is

- 7 -

the only means by which a party can give notice that an evidentiary hearing is required or that the government has a burden it has not met." *Svacina*, 137 F.3d at 1187. Moreover, without an objection, there is simply no factual record for us to review. *Id.*

2. Relevant Conduct

USSG §2G2.1(b)(2)(A) calls for a two-level enhancement to the base offense level if the offense involved "sexual contact." The guidelines define "sexual contact" by referring to its definition in 18 U.S.C. § 2246(3). USSG §2G2.1, comment. (n.2). As the statute reads, "the term 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

In determining whether the enhancement applies, we look to both the charged conduct and the relevant uncharged conduct. *See* USSG §1B1.3(a). Pertinent here, relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG §1B1.3(a)(1)(A). Thus, "[r]elevant conduct for sentencing purposes . . . comprises more, often much more, than the offense of conviction itself, and may include uncharged and even acquitted conduct." *United States v. Altamirano-Quintero*, 511 F.3d 1087, 1095 (10th Cir. 2007) (quotations omitted). Nonetheless, relevant conduct "still must relate to the offense of conviction." *Id.* (quotations omitted).

West does not dispute that K.F.'s touching of his penis while he closed his eyes constitutes "sexual contact" as defined in 18 U.S.C. § 2246(3). According to him that sexual conduct is not relevant to his sexual exploitation of K.F. because nothing in the record ties the two crimes together except a common victim. The touching was, he says, separate and distinct from the charged exploitation. We disagree.

According to the presentence report, on February 22, 2011, K.F. told the Child Welfare Specialist about West's sexual abuse of her in their home for the past year. It included West instructing her to fondle his penis, putting his penis on her leg, and taking pictures of her genitals. She also related the events of the previous night wherein West had asked her to "rub his bad spot" or she would not eat. (R. Vol. 3 at 4.) K.F. rubbed his penis while West closed his eyes. We have no difficulty in concluding this "sexual contact" occurred during the commission of the sexual exploitation of K.F. Not only was the same victim involved, the two crimes were temporally and spatially connected. The touching was part and parcel of the sexual exploitation.[6]

West relies on two cases from the Second Circuit. *See United States v. Wernick*, 691 F.3d 108 (2d Cir. 2012); *United States v. Ahders*, 622 F.3d 115 (2d Cir. 2010). The cases do not advance his arguments.

---

[6] The government tells us the enhancement is also warranted because West instructed K.F. to manipulate her clothing and body to allow him to see the inside of her vagina. Because the PSR did not rely on this conduct to support the enhancement, we decline to consider it. As things are, the enhancement is adequately supported by K.F.'s touching West's penis at his direction.

Wernick was convicted of, among other things, persuading, inducing and enticing teenage boys to engage in sexual activity. *Wernick*, 691 F.3d at 111-12. The judge included as relevant conduct Wernick's sexual molestation of three young children, all ages five or younger. *Id.* The Second Circuit decided the sexual molestation of the young children was not relevant to the crimes against the teenage boys because it did not occur during the commission of or in preparation for the crimes against them. *Id.* at 114. It rejected the government's argument that temporal proximity is enough. *Id.* at 115. It also required a connection between the two acts. *Id.* While there was evidence suggesting Wernick bragged about his exploits with the teenage boys in an effort to gain sexual access to a young child, the court determined this evidence only showed the exploits with the teenage boys was perhaps relevant to the crimes committed against the young children but not the converse, i.e., that the crimes committed against the young children played any role in Wernick's crimes against the teenage boys, the offense of conviction. *Id.* at 116-17.

Ahders pled guilty to producing child pornography involving his five-year-old stepson, E.M. *Ahders*, 622 F.3d at 117. However, at sentencing, he was held responsible for taking sexually explicit pictures of two other minors, B.B. and V.B., while they were at his home for a sleepover. *Id.* at 117-18. Those pictures included images of E.M. and B.B. performing sexual explicit acts on each other, which were done at Ahders's direction. *Id.* at 117. The Second Circuit decided the exploitation of B.B. and V.B. was relevant to the offense of conviction—exploitation of E.M.—because it occurred during the period Ahders was producing pornographic images of E.M. *Id.* at 120. It reasoned:

- 10 -

Ahders exploited and abused all three children, including abusing EM and BB together, during Mother's Day weekend in 2007 when VB and BB were staying with EM for a sleepover. During this weekend, Ahders produced pornographic images of all three children. Clearly, then, the abuse of VB and BB was 'relevant conduct,' and it was properly considered by the district court.

*Id.*

Wernick is unlike this case. We have more than temporal proximity here. Not only did K.F.'s touching of West's penis occur during the same time period as West's sexual exploitation of K.F., it also involved the same victim (K.F.) and occurred at the same place (West's home). *Ahders*, on the other hand, supports our resolution of this issue. Here, like in *Ahders*, K.F. touched West's penis during the same proximate time he was taking sexually explicit pictures of her.[7]

---

[7] Ahders's sentence was also enhanced for possession of material portraying sadistic or masochistic conduct. 622 F.3d at 120. This enhancement was based, at least in part, on his possession of images of young girls tied and bound. *Id.* at 120-21. Ahders claimed his possession of these images, which he did not produce, was not relevant conduct to his production of child pornography involving E.M. *Id.* at 121. The Second Circuit found the record insufficient to decide whether there was a link between Ahders's possession of the images of the young girls and his production of pornographic materials involving E.M. and remanded to the district court for further explanation. *Id.* at 121-22. It stated that on remand the court may consider several non-dispositive factors, including: (1) the temporal proximity between the possession of the images of the young girls and the offense of conviction, (2) whether Ahders showed the images of the young girls to E.M. to arouse E.M. or teach him what to do, (3) whether Ahders used the images of the young girls as samples or models in making the pornography of E.M., and (4) whether Ahders used the images of the young girls to arouse himself in order to abuse E.M. *Id.* at 122. Relying on these factors, West claims K.F.'s touching of his penis can only be considered relevant conduct to his sexual exploitation of her if he viewed the images of K.F. prior to sexually assaulting her or if he showed the images to her in order to demonstrate to her how to touch him. The argument is convenient, but not convincing. In *Ahders*, the court simply set forth factors the sentencing court could consider in determining whether there was a connection between Ahders's possession of child

(Continued . . . )

No error occurred.[8] West's sentence was properly enhanced based on his offense involving sexual contact.

B.    Substantive Reasonableness

West also claims his sentence is substantively unreasonable under the circumstances presented here. He cites his cooperation, his admission of guilt, his failure to challenge his sentence (because he did not want to cause any more harm to his victim), his lack of criminal history, and his own sexual abuse as a child. He also looks forward to lifetime supervision and registration as a sex offender. Finally, acknowledging the required restitution to the victim in this case[9] and his back child support debts, he

_____

pornography and his production of child pornography involving E.M. In this case, there is a direct link between the sexual contact and sexual exploitation charge—the same victim. Moreover, the crimes are linked in time and place.

[8] West also relies on USSG §2G2.2, the guideline applicable to trafficking in and possession of material involving the sexual exploitation of a minor. That guideline provides for a five-level enhancement to the base offense level "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." USSG §2G2.2(b)(5). The guideline in turn defines "[p]attern of activity involving the sexual abuse or exploitation of a minor" as "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct." USSG §2G2.2, comment. (n.1). According to West, this expansive definition is telling. Its absence in USSG §2G2.1, he says, demonstrates its inapplicability in cases like his. Not necessarily. Although USSG §2G2.1 does not contain a similar enhancement for a pattern of sexual abuse or exploitation, the relevant conduct provision of the guidelines (USSG §1B1.3(a)) still applies. As we have explained, the sexual contact involved in this case is conduct relevant to West's offense under USSG §1B1.3(a).

[9] The restitution award totaled $7,367.28. This amount included the expenses incurred by K.F.'s grandmother in taking her to and from counseling sessions and paying the legal fees necessary for her son (K.F.'s biological father) to obtain custody of K.F.

suggests his financial obligations would more readily be met if the length of his imprisonment was shorter.

In the district court, West did not object to the sentence being substantively unreasonable. However, he did argue for a sentence at the low end of the guideline range. He now argues his sentence (at the top of the guideline range) is so long that it is substantively unreasonable. His argument for a low end of the guidelines sentence, while tepid, was sufficient to preserve substantive unreasonableness for appellate argument. *See United States v. Mancera-Perez*, 505 F.3d 1054, 1058-59 (10th Cir. 2007); *United States v. Torres-Duenas*, 461 F.3d 1178, 1182-83 (10th Cir. 2006). Our review is for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). We consider "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Reyes–Alfonso*, 653 F.3d 1137, 1145 (10th Cir. 2011) (quotations omitted). Getting by the constraints of plain error review on the substantive reasonableness is often cold comfort. So it is here.

West still has a high hurdle to meet. Imprisonment for crimes such as this is condign punishment. Only the length of imprisonment is a debatable issue and that debate is procedurally constrained. As he acknowledges, because he was sentenced within the properly calculated guideline range, his sentence is presumed reasonable on appeal. *Id.* He can overcome this presumption only by "demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in § 3553(a)." *Id.* (quotations omitted).

West has not met his burden. While the judge's consideration of the § 3553(a) factors was not especially detailed, it need not be when, as here, he imposes a within-guideline sentence. *See United States v. Cereceres-Zavala*, 499 F.3d 1211, 1216-18 (10th Cir. 2007). In this case, the judge explained a 262-month sentence adequately accounts for the seriousness of the offense, sufficiently punishes West for his conduct, and provides adequate deterrence. The judge also obviously considered his cooperation with law enforcement and acceptance of guilt. But, while not to be discounted, his cooperation and acceptance of guilt was not extraordinary and was adequately accounted for by the three-level downward adjustment to the base offense level for acceptance of responsibility. The judge was also aware of West's claim to have been sexually abused as a child. While his abuse may help explain his deplorable conduct, it certainly does not excuse it. Finally, lifetime supervision and registration is undoubtedly a reasonable step in protecting the public from further crimes by West.

C.     Constitutionality of 18 U.S.C. § 2251(a)

We normally review challenges to the constitutionality of a statute de novo. *United States v. Jeronimo-Bautista*, 425 F.3d 1266, 1268 (10th Cir. 2005). However, where, as here, the issue is raised for the first time on appeal, our review is for plain error.[10] *United States v. Overstreet*, 40 F.3d 1090, 1092 (10th Cir. 1994).

_____

[10] Ordinarily, we would conclude West's unconditional guilty plea waived his argument that § 2251(a) is unconstitutional as applied to him. *United States v. De Vaughn*, 694 F.3d 1141, 1154 (10th Cir. 2012), *cert. denied*, 133 S. Ct. 2383 (2013). However, the government waived any reliance on the guilty plea by failing to raise its

(Continued . . . )

- 14 -

West argues the statute of conviction, 18 U.S.C. § 2251(a), is unconstitutional because, as applied to him, it violates the Commerce Clause.[11] He acknowledges we have previously upheld as applied constitutional challenges to § 2251(a) even where the possessed pornography was never distributed interstate and the defendants did not intend to benefit commercially from their conduct. *See United States v. Grimmett*, 439 F.3d 1263, 1273 (10th Cir. 2006); *Jeronimo-Bautista*, 425 F.3d at 1273. He claims his case is different, however, because he deleted the images and videos, thereby preventing any

---

preclusive effect in its appellate briefing. *Id.* at 1158.

In *De Vaughn*, we also determined Fed. R. Crim. P. 12(b)(3)(B) did not require De Vaughn to have raised his claims—the charging documents did not state an offense and the statutes of conviction were unconstitutional as applied to him—in a pretrial motion to dismiss because the rule allowed a criminal defendant to raise "at any time while the case is pending a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." *Id.* (quotations omitted). Because the court held neither of De Vaughn's arguments were jurisdictional, it obviously determined both arguments claimed the charging documents failed to state an offense. *Id.* at 1149-50. Nevertheless, because De Vaughn had not raised the arguments in the district court, the court applied plain error review. *Id.* at 1158.

Rule 12(b)(3) has since been amended, effective December 1, 2014. Under the new rule, an argument that an indictment or information fails to state an offense must be brought in a pretrial motion "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." *See* Fed. R. Crim. P. 12(b)(3)(B)(v) (effective December 1, 2014). Constitutional arguments, like West's, must now be brought via a timely motion to dismiss.

[11] West also objects to the statute on facial grounds but acknowledges our precedent foreclosing the argument. *See United States v. Grimmett*, 439 F.3d 1263, 1272 (10th Cir. 2006) ("§ 2251(a) reaches intrastate activity that substantially affects the interstate child pornography market, and, as such, it is a facially valid exercise of Congress's Commerce Clause power."); *see also In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) ("We cannot overrule the judgment of another panel of this court. We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court."). West wants to preserve the argument. He has done so.

- 15 -

chance of them ever entering the stream of commerce. He admits to having been found in possession of the image that was the subject of the indictment (K.F. in the bathtub). He claims, however, it is fair to assume he would have deleted this image, as he did others, but for the government's seizure of it.

Assuming West deleted the photographs he took of K.F. or intended to do so,[12] that does not meaningfully distinguish this case from *Grimmett* and *Jeronimo-Bautista* or compel a conclusion different from that reached in those cases. That West may have deleted the photographs only demonstrates his intent not to distribute them interstate— the same intent held or assumed to be held by the defendants in *Grimmett*, 439 F.3d at 1273, and *Jeronimo-Bautista*, 425 F.3d at 1268. Nevertheless, as in those cases, "Congress' decision to deem illegal [West's] local production of child pornography represents a rational determination that such local activities constitute an essential part of the interstate market for child pornography that is well within Congress' power to regulate." *Id.* at 1273.

---

[12] West's claim he deleted the images and videos he made of K.F. is not supported by the PSR. It merely states K.F. told the Child Welfare Specialist that West recorded videos of her but she believed he had deleted them because he had shown her the delete button on the computer. Even crediting K.F.'s assumption that West had deleted the videos he made of her, there is nothing in the PSR indicating West deleted the photographs he took of K.F. In fairness however, we acknowledge the criminal complaint in which the affiant FBI agent states that in an October 31, 2012 interview, West claimed to have deleted the photographs he took of K.F.

**AFFIRMED.**

Entered by the Court:

**Terrence L. O'Brien**
United States Circuit Judge